# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA

## Evansville Division

| | |
|---|---|
| EDMOND M. BUTCH, CHARLES R. WYATT, and MARTIN L. ELLISON, on behalf of themselves and all other persons similarly situated; UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO/CLC, and ALUMINUM TRADES COUNCIL OF WENATCHEE, WASHINGTON AFL-CIO,<br><br>        Plaintiffs,<br>v.<br><br>ALCOA USA CORP. and RETIREES GROUP BENEFIT PLAN FOR CERTAIN HOURLY EMPLOYEES OF ALCOA USA CORP.<br><br>        Defendants. | Case No.: 3:19-cv-258<br><br>**CLASS ACTION COMPLAINT**<br><br>Demand for Jury Trial |

## **CLASS ACTION COMPLAINT**

### I.   INTRODUCTION

1.   This action is brought by Plaintiffs Edmond M. Butch, Charles R. Wyatt, and Martin L. Ellison ("Class Representatives"), on behalf of themselves and similarly-situated retirees, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") and Plaintiff Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC"). USW and ATC are referred to collectively in this Complaint as the "Unions".

2.     The Unions, along with certain predecessor unions, were the collective bargaining agents for the retirees while they were employed by Defendant Alcoa USA Corp. ("Alcoa") and/or its predecessor companies, including Alcoa Inc. and Reynolds Metal Company.

3.     This case challenges Alcoa's announced termination of retirees' life insurance coverage, to be effective January 1, 2020.

4.     The Unions and Alcoa (and their respective predecessors) negotiated a series of collective bargaining agreements, which established the company's obligation to provide life insurance to retirees.

5.     Retirees earned this life insurance coverage through decades of employment.

6.     Despite the collectively bargained contract provisions, as well as other promises to provide continuing coverage to retirees, Alcoa has announced that it will unilaterally terminate the retiree life insurance it has long provided to retirees, to be effective January 1, 2020.

7.     Because retirees' life insurance coverage is the result of bargaining between labor organizations and an employer, Alcoa's actions are actionable in this Court under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). All Plaintiffs proceed against Alcoa in their Count One LMRA claim.

8.     Alcoa's conduct also violates the retirees' rights and Alcoa's obligations under an employee benefit plan, and is therefore actionable in this Court under Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

9.     The Class Representatives bring their Count Two ERISA claim against Alcoa and the employee benefit plan through which Alcoa provided retiree life insurance: Retirees Group Benefit Plan for Certain Hourly Employees of Alcoa USA Corp.

## II.   JURISDICTION AND VENUE

10. This Court has jurisdiction over Counts One and Two under 28 U.S.C. § 1331, as both counts raise federal questions.

11. This Court also has jurisdiction over Count One under LMRA § 301, 29 U.S.C. § 185.

12. This Court also has jurisdiction over Count Two under ERISA §§ 502(e)(1) and (f), 29 U.S.C. §§ 1132(e)(1) and (f).

13. Venue in this judicial district is proper under LMRA § 301, 29 U.S.C. § 185, and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia*, there are 1,000 or more affected retirees from Alcoa's Warrick Operations facility in Newburgh, Indiana.

## III.   PARTIES

14. Plaintiff Edmond M. Butch is an adult resident of Newburgh, Indiana. Mr. Butch worked for Alcoa's predecessors at its Warrick Operations facility in Newburgh, Indiana for 30 years until he retired in 2008, and was represented by the USW and its predecessors during his employment. Mr. Butch has been eligible for and entitled to company-paid life insurance since his retirement.

15. Plaintiff Charles R. Wyatt is an adult resident of Boonville, Indiana. Mr. Wyatt worked for Alcoa's predecessors at its Warrick Operations facility in Newburgh, Indiana for 40 years until he retired in 2013, and was represented by the USW and its predecessors during his employment. Mr. Wyatt has been eligible for and entitled to company-paid life insurance since his retirement.

16. Plaintiff Martin L. Ellison is an adult resident of Chandler, Indiana. Mr. Ellison worked for Alcoa's predecessors at its Warrick Operations facility in Newburgh, Indiana for 36

years until he retired in 2014, and was represented by the USW and its predecessors during his employment. Mr. Ellison has been eligible for and entitled to company-paid life insurance since his retirement.

17. Plaintiff USW is a labor organization headquartered in Pittsburgh, Pennsylvania. The USW employs personnel in the Southern District of Indiana, where it serves as an exclusive bargaining representative for several units of employees. For several decades, the USW—including predecessor unions and unions with which it has merged—has served as the exclusive bargaining representative for certain groups of Alcoa employees and has negotiated collective bargaining agreements with Alcoa and its predecessors relating to, *inter alia*, life insurance for retired hourly employees.

18. Plaintiff ATC is a labor organization headquartered in Wenatchee, Washington and serves as an exclusive bargaining representative for hourly employees at Alcoa's Wenatchee, Washington facility. For several decades, the ATC has negotiated collective bargaining agreements with Alcoa and its predecessors relating to, *inter alia*, life insurance for retired hourly employees.

19. Defendant Alcoa USA Corp. is a Delaware Corporation and a wholly-owned subsidiary of Alcoa Corporation, which identifies itself as "a global industry leader in the production of bauxite, alumina and aluminum, enhanced by a strong portfolio of value-added cast and rolled products and select energy assets." Alcoa Corporation was spun-off from Alcoa Inc. on November 1, 2016, after which Alcoa Inc. was renamed Arconic Inc.

20. Defendant Alcoa USA Corp. is Alcoa Corporation's principal U.S. operating subsidiary and operates an aluminum smelter and rolling mill at its Warrick Operations facility in

Newburgh, Indiana. The rolling mill produces aluminum sheet primarily sold directly to customers in the packaging end market for the production of aluminum cans.

21. Defendant Alcoa USA Corp. is qualified and registered to do business in Indiana and has such extensive contacts within this judicial district that it "may be found" in this district within the meaning of 29 U.S.C. § 1132(e)(2).

22. Defendant Alcoa USA Corp. is an employer engaged in commerce and is sued in its capacities as employer, and as plan sponsor and plan administrator of the employee benefit plan through which the company provided retiree life insurance to members of the retiree class.

23. Defendant Retirees Group Benefit Plan for Certain Hourly Employees is an "employee benefit plan" within the meaning of ERISA which provides welfare benefits, including life insurance, to members of the retiree class. Upon information and belief, Defendant Alcoa USA Corp. is the plan sponsor and administrator of this plan.

### IV. STATEMENT OF FACTS

24. The Unions and Alcoa (and their respective predecessors) share a long history of negotiating labor agreements that provide retiree life insurance to retirees.

25. For example, a February 1, 1974 collective bargaining agreement ("CBA") between the Aluminum Company of America and various locals of the Aluminum Workers International Union addresses the rights of employees and retirees of various Alcoa facilities, including the Warrick Operations facility in Newburgh, Indiana.

26. That 1974 CBA provides: "[a] Life Insurance benefit shall be payable upon death after retirement (except a deferred vested retirement) under the provisions of the Employees' Retirement Plan…"

27.   A June 1, 1977 CBA likewise provides that "[a] Life Insurance benefit shall be payable upon death after retirement (except a deferred vested retirement) under the provisions of the Employees' Retirement Plan…"

28.   A June 1, 1980 CBA, applicable to facilities that include the Warrick Operations facility, similarly provides under "Article XXIII. Group Insurance," that, as to "retired employees … who are receiving a pension under the Pension Agreement … [t]he Company will also provide Life Coverage and Surviving Spouse Coverage for such retired employees."

29.   The 1980 CBA also provides: "All of the above benefits will be provided without cost to employees and retirees except as otherwise provided. Separate booklets describing these benefits are incorporated herein and made a part of this Agreement."

30.   Subsequent CBAs negotiated in the 1980s, 1990s, and 2000s include the same or substantially the same language, and throughout that time, the company provided the negotiated coverage and the families of deceased retirees were paid the negotiated benefits.

31.   For example, two May 31, 2010 CBAs between the USW and Alcoa Inc., applicable to various facilities that include the Warrick Operations facility, provide under "Article XXIII. Group Insurance," that, as to "retired employees . . . who are receiving a pension under the Pension Agreement . . . [t]he Company will also provide Life Coverage and Surviving Spouse Coverage for such retired employees." A May 31, 2010 CBA between the ATC and Alcoa Inc. includes a substantively identical provision. Pertinent excerpts from these 2010 CBAs are attached hereto as Exhibit A.

32.   Each of these 2010 CBAs also state that "Separate booklets describing these benefits are incorporated herein and made a part of this Agreement. Effective January 1, 2011,

the agreed upon modifications to all Group Insurance benefits will become effective and incorporated into plan booklets."

33. A summary plan description ("SPD") titled "Retiree Life Insurance Summary Plan Description Master Agreement Plan" and distributed to retirees in October 2013 ("2013 Retiree Life Insurance SPD") was one of the "separate booklets" and "plan booklets" referenced in the 2010 CBAs. A copy of this 2013 Retiree Life Insurance SPD is attached hereto as Exhibit B.

34. The 2013 Retiree Life Insurance SPD accordingly states that "[t]he plan is maintained pursuant to one or more collective bargaining agreements," and that the SPD is "incorporated in and made part of the collective bargaining agreements between Alcoa Inc. and the unions listed under the 'Participating Unions' section of this booklet."

35. The "Participating Unions" section of the SPD included retirees who had been represented by the USW at thirty-four locations, including the Warrick Operations facility, and by the ATC at the Wenatchee, Washington location.

36. The "Plan Overview" section at the beginning of this SPD states in part: "Alcoa provides eligible retirees with company-paid life insurance to help protect you and your family in the event of your death." The 2013 Retiree Life Insurance SPD also provides:

> **Future of the Plan**
>
> The plan described in this booklet is provided for the term of the collective bargaining agreement between the union and Alcoa Inc. The company reserves the right to make administrative changes to the plan from time to time. However, **these changes cannot diminish the benefits negotiated under the terms of the agreement**.

(emphasis added to final sentence).

37. The 2013 Retiree Life Insurance SPD sets forth the negotiated amounts for company-paid retiree life insurance in the following chart:

| Amount of Company-Provided Life Insurance | | |
|---|---|---|
| Date of Retirement | Benefit Prior to Age 62 | Benefit At/After Age 62 |
| On or after 6/1/1993 but prior to 6/1/1996 | $35,000 | $4,500 |
| On or after 6/1/1996 but prior to 4/1/2002 | $35,000 | $5,000 |
| On or after 4/1/2002 but prior to 6/1/2006 | $40,000 | $7,500 |
| On or after 6/1/2006 but prior to 1/1/2011 | $44,000 | $7,500 |
| On or after 1/1/2011 | $48,000 | $7,500 |

38. The 2013 Retiree Life Insurance SPD is the most recent retiree life insurance SPD applicable to members of the retiree class.

39. As set forth in the 2014 Settlement Agreement, during the 2014 round of negotiations the Unions and Alcoa Inc. agreed that "[a]ll Alcoa-USW Master Agreement benefits, Summary Plan Descriptions, letters of understanding and side letters between the Company and the Union, will be renewed and continue in full force and effect unless the parties have specifically agreed to change, alter or eliminate such agreements in these negotiations." Pertinent excerpts from the 2014 Settlement Agreement are attached as Exhibit C.

40. Two May 16, 2014 CBAs between the USW and Alcoa Inc., applicable to different groups of facilities, both provide:

GROUP INSURANCE

Medical Benefits, Prescription Drug Benefits, Dental Benefits, and Vision Benefits will be provided to eligible active employees and their eligible dependents. The Company will provide Sickness and Accident, Life Insurance, and Accidental Death and Dismemberment benefits to eligible active employees. **The Company will also provide** Medical and Prescription Drug Benefits to

> eligible retirees, surviving spouses, and their eligible dependents and **Life Insurance to eligible retirees.**
>
> **Separate booklets describing these benefits are incorporated herein and made a part of this Agreement.** Effective January 1, 2015, the agreed-upon modifications to all Group Insurance benefits will become effective and incorporated into plan booklets.

(Emphasis added). A May 16, 2014 CBA between ATC and Alcoa Inc. has a substantively identical "Group Insurance" provision. Pertinent excerpts from these 2014 CBAs are attached as Exhibit D.

41. The Unions and Alcoa Inc. did not agree to change, alter or eliminate any agreements with regard to retiree life insurance benefits in the 2014 negotiations. Nor did the company publish a new SPD for retiree life insurance. As such, the terms of the 2013 Retiree Life Insurance SPD remained in effect during the term of the 2014 CBAs.

42. Effective August 1, 2016, as discussed above, the entity formerly known as Alcoa Inc. separated into two entities, Arconic Inc. and Alcoa Corporation, the parent company of Defendant Alcoa USA Corp. The benefit obligations of Arconic Inc. are not at issue in this action.

43. As set forth in an October 6, 2016 Letter of Understanding to the USW regarding "Alcoa Separation and Master Contract Matters," the two new entities (Alcoa Corporation and Arconic Inc.) jointly stated:

> Except as provided in this letter of agreement, Alcoa Corporation and Arconic separately agree on behalf of themselves and their applicable subsidiaries (specifically including Alcoa USA Corp.) that the applicable Master Agreements will continue in full force and effect at their respective Master Contract plants as listed below. This includes the collective bargaining agreements, pension agreements, and benefit agreements and SPDs, as well as past interpretations, practices, and arbitration history unless changed or amended by means afforded each entity (and the respective plants) through mid-term bargaining, arbitration, proper changes to past practice, and/or negotiations at the end of the current term of the agreements.

9

A copy of this Letter of Understanding is attached hereto as Exhibit E.

44. The Letter of Understanding allocated a number of facilities to Alcoa Corporation "for pension purposes," including the Warrick Operations facility and one in Richmond, Indiana.

45. The Letter of Understanding then states, under a section titled "Retiree Health Care and Life Insurance Issues, that "retiree health care and life insurance benefits obligations for bargaining unit employees and retirees will be allocated between Alcoa Corporation and Arconic in the same manner as the pension liabilities and assets."

46. The Letter of Understanding goes on to state that "Alcoa Corporation and Arconic each will provide a program of retiree health care and life insurance benefits **identical** to the retiree programs presently provided by Alcoa, Inc." (Emphasis added).

47. Alcoa did not create or provide the Unions with a new retiree life insurance SPD following the 2016 separation, meaning that the 2013 Retiree Life Insurance SPD remained in effect (and as explained below, continues to remain in effect).

48. On September 19, 2019, the members of the Unions ratified a Settlement Agreement that was entered into between the Unions and Alcoa in August 2019 ("2019 Settlement Agreement"). Pertinent excerpts from this 2019 Settlement Agreement are attached hereto as Exhibit F.

49. The 2019 Settlement Agreement is effective through May 15, 2023.

50. The 2019 Settlement Agreement provides that the parties:

agree that the current labor agreements and working rules for the Company's facilities at Gum Springs, AR (Local 5073); Massena, NY (Local 420); Point Comfort, TX (Local 4370-01); Warrick, IN (Local 104); and Wenatchee, WA (Aluminum Trades Council) **shall remain unchanged except as modified below** to provide new labor agreements dated the day of ratification.

(Emphasis added).

51. Attachment 2 to the 2019 Settlement Agreement, titled the "Company Revised Economic Proposal USW/Alcoa USA Corp. Master Agreement Negotiations" provides:

> The 2014 Labor Agreement economic provisions are revised in the following manner. **All other matters included in the labor agreement not referenced herein**, except those agreed to at the Language Table, **remain unchanged**.

(Emphasis added)

52. Attachment 2 to the 2019 Settlement Agreement includes the only reference in the 2019 Settlement Agreement to retiree life insurance, stating, within a chart: "Retiree Life Insurance: W/D".

53. The statement "Retiree Life Insurance: W/D" in Attachment 2 to the 2019 Settlement Agreement refers to Alcoa's withdrawal during bargaining of its proposal to eliminate retiree life insurance for future retirees and buy out the retiree life insurance benefit for existing retirees.

54. Attachment 21 to the 2019 Settlement Agreement states that the failure to list in the Settlement Agreement certain specified facilities which were shut down or sold:

> shall not adversely affect the rights, if any, of such individuals. In the event a dispute arises as to the rights, if any, of such individuals, it shall be resolved as though those local union members had been included in the Settlement Agreement.

55. Because the 2019 Settlement Agreement does not change the parties' agreements as to retiree life insurance as set forth in prior CBAs, those prior agreements, as set forth in the 2014 CBAs and the 2013 Retiree Life Insurance SPD, remain in full force and effect as part of the parties' 2019 agreements.

56. Despite this agreement, in letters dated "December 2019" sent to members of the retire class, Alcoa stated:

11

> This letter is to inform you of the decision to eliminate the company-provided life insurance to most hourly retirees on December 31, 2019. This includes coverage on your spouse and plans referred to as voluntary, additional voluntary, or supplemental (VLIP, AVLIP, SLIP).

A copy of this December 2019 letter is attached hereto as Exhibit G.

57. Alcoa's termination of retiree life insurance violates the parties' bargained agreements.

58. Alcoa has included checks for nominal amounts with its December 2019 letters to retirees, stating that "we are providing a discretionary payment that represents a portion of the benefit" and that:

> By endorsing and presenting this check for payment, you are agreeing to waive any claims for life insurance coverage from the Company after December 31, 2019. If you do not agree to this waiver, you should not endorse, deposit, or cash the enclosed check. You may wish to discuss this with your personal financial advisor or attorney, before endorsing, depositing, or cashing the enclosed check.

59. The December 2019 letter's description of retirees' rights is incomplete and misleading, and as such no effective waiver may be made by retirees under these circumstances.

## V.   CLASS ACTION ALLEGATIONS

60. Class Representatives bring this action on behalf of themselves and the following class ("Class") of similarly situated persons:

> All retirees of Alcoa USA Corp., its predecessors, or affiliated companies (i) who were represented by the USW or its predecessors while they were employees (or in the case of the Wenatchee, Washington facility were represented by the ATC or its predecessors while they were employees), (ii) who were eligible for company-provided life insurance upon their retirement, and (iii) as to whom Alcoa USA Corp. has terminated or announced its intention to terminate company-provided retiree life insurance.

61. Upon information and belief, the number of Class members is in the thousands, and the Class is large enough that joinder of individual members in this action is impracticable.

62. There are common questions of law and fact that relate to and affect the Class, including whether Class members have a right to company-provided retiree life insurance through at least the end of the term of the parties' new labor agreements, as set forth in the 2019 Settlement Agreement.

63. The relief sought is common to all Class members as set forth below in the section titled, "Relief Requested."

64. The claims of the Class Representatives are typical of the claims of all Class members, namely that Defendants are obligated under LMRA § 301 and ERISA to provide them with retiree life insurance coverage, as provided under collective bargaining agreements between the Unions and Alcoa, and that Defendants could not unilaterally terminate this coverage.

65. There is no conflict between the Class Representatives and any other Class member with respect to this action.

66. The Class Representatives will fairly and adequately protect the interests of the Class members.

67. Attorneys for the Class Representatives are experienced and capable in the field of labor law and ERISA and have successfully litigated numerous LMRA and ERISA class actions involving the retiree benefits of former union employees.

68. This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(1)(A). Because of the uniform standards of conduct imposed by ERISA, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for Alcoa.

69. This action is also properly maintained as a class action under Fed. R. Civ. P. 23(b)(2), in that Alcoa has acted on grounds generally applicable to the class by unilaterally

terminating retiree life insurance it is obligated to provide to Class members, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

70. Alternatively, this action is maintainable as a class action under Fed. R. Civ. P. 23(b)(3), as the common questions of law and fact described above predominate over any questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT ONE

Violation of Collective Bargaining Agreements, Actionable under LMRA § 301

(Against Defendant Alcoa by All Plaintiffs)

71. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

72. The collective bargaining agreements described above providing for retiree life insurance are "contract[s] between an employer and a labor organization" within the meaning of LMRA § 301, 29 U.S.C. § 185.

73. The contracts conferred upon all Class members a right to continued retiree life insurance coverage, at least through the end of term of the parties' new labor agreements, as set forth in the 2019 Settlement Agreement. By announcing its intention to unilaterally terminate this coverage, Alcoa has breached these contracts.

74. Alcoa's breach of its collectively bargained obligations is actionable under LMRA § 301, 29 U.S.C. § 185.

## COUNT TWO

Violation of Employee Benefit Plan, Actionable under ERISA § 502(a)
(Against all Defendants by Class Representatives)

75. Plaintiffs incorporate by reference all preceding allegations as though fully set forth here.

76. Defendants are obligated to provide retiree life insurance pursuant to the terms of the **negotiated** governing ERISA documents. The collective bargaining agreements described above providing for continued retiree life insurance are "plan documents" within the meaning of ERISA.

77. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

78. ERISA § 502(a)(3), 29 U.S.C. § 1132 allows a participant or beneficiary to bring a civil action "to enjoin any act or practice which violates [ERISA] or the terms of the plan, or … to obtain other appropriate equitable relief … to redress such violations or … to enforce any provisions of [ERISA] or the terms of the plan."

79. Defendants' repudiation of negotiated plan terms is actionable under ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3).

80. Moreover, Alcoa's conduct in terminating the company-provided life insurance violates its ERISA fiduciary duties of loyalty and prudence by failing to preserve the retirees' ability to maintain or convert their existing coverage which may unavailable in the open market.

81. Additionally, a participant suing under these provisions is entitled to interest on any retroactive amounts awarded.

## VI.   RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that this Court:

A.   Certify this action as a class action, appoint Plaintiffs Edmond M. Butch, Charles R. Wyatt, and Martin L. Ellison as Class Representatives, and appoint Macey Swanson LLP and Feinstein Doyle Payne & Kravec, LLC as counsel for the Class.

B.   Declare that the retiree life insurance provided by the collective bargaining agreements cannot be unilaterally terminated or modified by Defendants.

C.   Enjoin Defendants from terminating or modifying the retiree life insurance coverage provided to Class members.

D.   Declare that no Class member waives or has waived any claims for life insurance from Alcoa by virtue of cashing any checking purporting to represent Alcoa's "discretionary payment" of a portion of the life insurance benefit.

E.   As necessary, award to the Class Representatives and to Class members (or their designated life insurance beneficiaries) life insurance benefits pursuant to the terms of the collective bargaining agreements, and/or monetary damages or restitution or other monetary relief (plus interest), and/or other equitable relief such as reinstatement or reformation, as necessary, to restore them to the position in which they would have been but for Defendants' contractual violations.

F.   Award Plaintiffs their reasonable attorneys' fees and costs incurred in this action.

G.   Grant such further relief as may be deemed necessary and proper.

### VII. JURY DEMAND

Plaintiffs request a jury trial of all issues so triable.

Dated: December 19, 2019                    Respectfully submitted,

   s/ Barry A. Macey
**MACEY SWANSON LLP**
Barry A. Macey
Jeffrey A. Macey
445 N. Pennsylvania Street, Suite 401
Indianapolis, Indiana 46204
Telephone: (317) 637-2345
Facsimile: (317) 637-2369
bmacey@maceylaw.com
jmacey@maceylaw.com

**FEINSTEIN DOYLE PAYNE
   & KRAVEC, LLC**
William T. Payne (motion for *pro hac vice* forthcoming)
Pamina Ewing (motion for *pro hac vice* forthcoming)
Joel R. Hurt (motion for *pro hac vice* forthcoming)
Ruairi McDonnell (motion for *pro hac vice* forthcoming)
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
wpayne@fdpklaw.com
pewing@fdpklaw.com
jhurt@fdpklaw.com
rmcdonnell@fdpklaw.com

*Attorneys for Plaintiffs*

David R. Jury, General Counsel (motion for *pro hac vice* forthcoming)
United Steelworkers
60 Boulevard of the Allies, Room 807
Pittsburgh, Pennsylvania 15222
Telephone: (412) 562-2549
Facsimile: (412) 562-2574
djury@usw.org

*Attorneys for Plaintiff United Steelworkers*