UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| EDMOND M. BUTCH on behalf of himself and all other persons similarly situated, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:19-cv-00258-RLY-MPB |
| ALCOA USA CORP., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**ENTRY GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

At the end of 2019, Defendant Alcoa terminated life insurance benefits for a wide swath of its retired employees.  Those retirees now challenge the elimination of company-paid life insurance benefits because they believe the termination violated the master collective bargaining agreement between Alcoa and the collective employees.  A subset of those retirees also seek the reinstatement of a different life insurance plan whose revocation allegedly violated a different set of collective bargaining agreements between Alcoa and the retirees.  Because there are approximately 5,661 retirees that lost benefits—with the subset numbering approximately 879—Plaintiffs move for class certification alleging a common question of law or fact.  After reviewing the parties' submissions and scrupulously scrutinizing the evidence, the court **GRANTS** Plaintiffs' motion for class certification.

## I.    Background

Plaintiffs are retirees from a variety of different Alcoa facilities around the country who were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") and its predecessors or by the Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC") and its predecessors.  (Filing No. 44, Am. Compl. ¶¶ 13–18).  The putative class members retired from 21 different Alcoa facilities.  (Filing No. 97-2, Ackerman Decl. ¶ 11).  Prior to the end of 2019, these retirees received life insurance benefits from Alcoa that could be described in one of two ways: "company-paid life insurance" or "optional life insurance" where a retiree would pay a contractual premium to receive additional, voluntary coverage.  (*Id.* ¶¶ 13–15, 17–18, 74–75).

On December 31, 2019, Alcoa eliminated both types of life insurance benefits. (Ackerman Decl. ¶ 2).  Plaintiffs contend the elimination of these benefits violates their contractual rights negotiated as part of collective bargaining between Alcoa and the Unions that represented Plaintiffs while they were employed.  (Am. Compl. ¶¶ 74–80). Plaintiffs divide these alleged violations into two groups.  First, by eliminating company-paid benefits, Alcoa violated a master collective bargaining agreement created in 2019 that guaranteed retirees continuing life insurance benefits regardless of where they retired from.  (*Id.* ¶ 74 (the "Main Class")).  Second, by eliminating optional life insurance benefits, Alcoa violated multiple different agreements that all give eligible retirees the right to optional life insurance benefits which would continue "for life."  (*Id.* ¶¶ 62, 75, 80 (the "Subclass")).

2

A.    **Main Class**

Plaintiffs assert that the master collective bargaining agreement ("master agreement") between the workers union and Alcoa, signed in 2019, gives all of the retirees a right to company-paid life insurance.  (*Id.* ¶¶ 88–98).  They specifically contend that even though the master agreement is nominally only applicable to Alcoa's plants at Warrick and Massena, the master agreement incorporates language that gives all retirees, regardless of their facility, a right to company-paid life insurance for the duration of the agreement.  (*Id.* ¶¶ 27–58).  This assertion is based on language indicating that the master agreement covered all retired employee's healthcare benefits which includes "[l]ife [i]nsurance," regardless of facility.  (Filing No. 90-1 at 59, 133–141 (2019 Master Agreement)).  Alcoa even acknowledged that the life insurance benefits of "USW retirees who retired after 1993" were "subject to the current" master agreement signed in 2019. (Filing No. 102-1 at 2).  The plaintiffs further point to a booklet that they allege is incorporated into the master agreement that guarantees Alcoa "cannot diminish the benefits negotiated under the terms" of prior bargaining agreements.  A total of 5,661 retirees from 21 different facilities are, as Plaintiffs allege, guaranteed some level of company-paid life insurance under the master agreement.  (Ackerman Decl. ¶ 11).

Put simply, Plaintiffs allege that—through a convoluted series of contractual incorporations—the master agreement applies to every retiree and prevents Alcoa from diminishing their benefits.  Alcoa discusses a wide variety of other collective bargaining agreements between Alcoa and the individual facilities, but these agreements are not

relevant to Plaintiffs' legal claim that the master agreement itself provides them a right to company-paid life insurance.

In bringing this putative class action, the named Plaintiffs are retirees from different Alcoa facilities.  (Am. Compl. ¶¶ 13–18).  Not only did these plaintiffs work for Alcoa and retire from a variety of facilities, but they also were eligible for and received company-paid life insurance before Alcoa eliminated that benefit at the end of 2019. (*Id.*).

### B.   Subclass

Unlike the Main Class, the claims of the subclass arise out of multiple different contractual agreements.  These Plaintiffs collectively had the ability to "purchase additional life insurance coverage for [themselves] to supplement the life insurance provided by Alcoa."  (*See, e.g.*, Filing No. 90-5, 1993 Life Insurance Plan Description at 1).  That ability was contractually guaranteed to subclass retirees through 17 different collective bargaining agreements.  (Filing No. 102, Ewing Decl. ¶ 10).  Every one of those agreements contained the identical language that the specifics of the plan would be described in "[s]eparate booklets" that were "incorporated . . . and made part of th[e] Agreement."  (Filing Nos. 102-9 to 25, Collective Bargaining Agreements 1–17).[1]  There are only six booklets that describe the plan.

---

[1] Language can be found in Ex. 9 at 47; Ex. 10 at 66; Ex. 11 at 118; Ex. 12 at 45; Ex. 13 at 61; Ex. 14 at 107; Ex. 15 at 44; Ex. 16 at 34; Ex. 17 at 102; Ex. 18 at 47; Ex. 19 at 58; Ex. 20 at 102; Ex. 21 at 46; Ex. 22 at 60; Ex. 23 at 98; Ex. 24 at 61; Ex. 25 at 98.

Early descriptions of the optional life insurance plan indicated that these life insurance benefits are "reduced at age 65" but those reduced amounts "are continued for life." (1993 Life Insurance Plan at 25; *see also* Filing No. 90-6, 1996 Life Insurance Plan Description at 25 (same)). Later descriptions contained identical language about the reduction in benefits but lacked the language indicating coverage continued for life. (*See* Filing Nos. 102-30 to 33, 2001, 2005, 2010 and 2014 Plan Summaries). Plaintiffs' legal theory is that these newer descriptions built on, but did not replace, the prior descriptions. In their view, then, each of the 17 collective agreements contains an identical guarantee to optional life insurance for life.

There are 879 retirees from 10 different facilities that Plaintiffs allege have a right to optional life insurance benefits for life. (Ackerman Decl. ¶ 17). The named plaintiff for this claim is Robert Crow, who retired from Alcoa's Bauxite facility in 1998. (Am. Compl. ¶ 18). He paid for the optional life insurance. (*Id.*)

## II.   Legal Standard

To determine whether class certification is proper, the "court may not simply assume the truth of the matter as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The plaintiff must "prove that there are *in fact* sufficiently numerous parties [and] common questions of law or fact" by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis original). While this "will entail some overlap with the merits," *id.*, it does not provide a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Ct. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

5

Accordingly, the court may consider the merits "only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* This brief survey of the merits may not evaluate the probable outcome of a merits question; it serves only to determine if the Rule 23 factual predicates exist. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001); *see also Amgen* 568 U.S. at 466.

## III.    Discussion

To meet their burden for class certification, Plaintiffs must show the proposed class satisfies "the requirements of Federal Rule of Civil Procedure 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner*, 669 F.3d at 811.  Rule 23(a) requires that the class satisfy the requirements of commonality, numerosity, typicality and adequacy of representation.  Fed. R. Civ. P. 23(a).  Following that analysis, Rule 23(b) allows class certification if (1) separate actions would establish "incompatible standards of conduct for the party opposing the class" or individual adjudication would "be dispositive of the interests of the other members not parties to the individual adjudication;" (2) "the party opposing the class has acted or refused to act on grounds that apply generally to the class" so that injunctive relief "is appropriate respecting the class as a whole;" or (3) "questions of law or fact common to class members predominate," Fed. R. Civ. P. 23(b)(1–3).

The court concludes, with respect to both the main class and subclass, all of the Rule 23(a) requirements are satisfied and the classes can be certified under Rule 23(b)(1).

## A.     Main Class

Whether the class certification requirements are satisfied in relation to the main class turns primarily on if plaintiffs adequately show that all the retirees' claims to life insurance arises from the same contract: the 2019 master agreement.  The court concludes they do.  Because of that, the putative class of 5,661 retirees all share the common question of whether Alcoa violated the master agreement when it eliminated life insurance benefits which satisfies the first three Rule 23(a) requirements.  The court also finds the named Plaintiffs adequate to represent the class.  And because different answers to this common question would subject Alcoa to inconsistent judgments that establish incompatible standards, Plaintiffs' submissions satisfy the class certification requirements as a Rule 23(b)(1) class.

### 1.     Commonality

Plaintiffs allege, and a peek at the merits confirms, that the answer to a common question determines whether each class member has a valid claim.  *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("[A] court may take a peek at the merits before certifying a class.").  Namely, whether the master agreement requires Alcoa to provide life insurance to all class members.  As the answer to that question can produce a "single answer" that will "resolve a central issue in all class members' claims," Plaintiffs satisfy the commonality requirement. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 496 (7th Cir. 2012).

Commonality focuses on whether "there are questions of law or fact common to the class." *Chi. Tchrs. Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426,

434 (7th Cir. 2015). In that regard, the focus is on whether the members of "the proposed plaintiff class are the victims of a common wrong rather than many individualized wrongs," Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009), rather than whether plaintiffs merely suffer "as a result of a violation of the same provision of law." *Chi. Tchrs.*, 797 F.3d at 434. The claims "must depend on a common contention" that is "capable of classwide resolution," meaning the resolution of the question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. At the certification stage, a proposed class need not show "the answer to that question will be resolved in its favor." *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015).

Plaintiffs' claim is that Alcoa violated their right to company-paid insurance that Alcoa contractually provided through collective bargaining. (*See* Am. Compl. ¶ 88–98). Specifically, they argue that the master agreement incorporates the retiree life insurance agreements bargained for under prior collective bargaining agreements. (*Id.* ¶¶ 27–58). If that were true, Alcoa's complete termination of company-paid life insurance benefits would violate the master agreement as to each member of the putative class.

That creates commonality. Because the courts determination of the scope of the master agreement will effectively resolve the controversy as to each member of the putative class, the scope of the master agreement is a common question to the class. That the court's determination of that singular legal issue would be dispositive on the merits is indicative that the putative class members have commonality. *See Dukes*, 564 U.S. at

350 (noting that commonality is found where a determination will resolve the issue "in one stroke").

A peek at the merits confirms that this is a common question to the putative class because the master agreement does seem to give all retirees a right to some life insurance. Specifically, the master agreement contains language indicating the agreement covers retired employees for healthcare benefits which includes "Medical and Prescription Drug Benefits" as well as "Life Insurance." (Filing No. 90-1 at 59, 133–41). Alcoa has further acknowledged that the benefits of "USW retirees who retired after 1993" were "subject to the current" master agreement. (Filing No. 102-1 at 2). While this is not a conclusive determination as to the scope of the master agreement, *Bell*, 800 F.3d at 376 (noting "the default rule is that a court may not resolve merits questions at the class certification stage"), Plaintiffs have submitted evidence supporting their contention that there is a common question. In other words, this is not some spurious claim to finagle class certification; there is a bona fide dispute as to the scope of the master agreement which is suitable for resolution on a classwide basis. Accordingly, Plaintiffs demonstrate "that there are *in fact* . . . common questions of law." *Dukes*, 564 U.S. at 350; *see also Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

Alcoa raises two arguments in an attempt to prevent class certification, but both fail. To start, Alcoa contends that the master agreement does not provide a guarantee of company-paid life insurance. Instead, Alcoa submits any right to company-paid life insurance is contained in each facility's unique collective bargaining agreement. Because Plaintiffs' claims arise from multiple different agreements, Alcoa argues, the court cannot

9

find commonality (as well as typicality and predominance).  But that goes to the merits, not whether there is a common question.  It might be true that the master agreement does not give Plaintiffs a right to company-paid life insurance, but, as Plaintiffs concede, answering the common question that way resolves all of the putative class members' claims "in one stroke."  *Dukes*, 564 U.S. at 350.  The actual scope of the master agreement is, accordingly, not dispositive on the question of commonality.

Next, Alcoa claims that 88% of the putative class members have waived their claims by cashing checks Alcoa sent to them which creates a threshold issue that prevents class certification.  Not so.  Affirmative defenses like waiver under Fed. R. Civ. P. 8(c)(1) are not necessarily a valid basis to deny class certification.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–55 (2016) (explaining where there is common questions that predominate, class actions are proper "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members"); *see also Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (noting the relevant inquiry for class actions is "the company's actions, not . . . particularized defenses [defendant's] may have against certain class members").  Accordingly, it is a regular feature for courts to certify a class even though the defendants may have affirmative defenses against the class.  *See Temme v. Bemis Co.*, No. 08-cv-090, 2009 WL 1505120, at *4 (E.D. Wis. May 28, 2009) (certifying class over argument that there was a lack of commonality because "retirees had to sign individual releases" as there was a common question of law present); *see also Green v. Serv. Master on Location Servs. Corp.*, No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009); *Nelson v.*

*IPALCO Enter.*, No. IP02-477CHK, 2003 WL 23101792 (S.D. Ind. Sept. 30, 2003);

*Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (granting class

certification while noting that the proper remedy would be "to exclude" or "establish a

sub-class of individuals who have executed releases"); *In re Aquila ERISA Litig.*, 237

F.R.D. 202, 211 (W.D. Mo. 2006) ("The existence of the releases does not disqualify

class certification at this point" but "[t]he parties are free . . . to litigate that issue and

request decertification of class members who signed the releases, if such an action

becomes appropriate."); *In re Williams Co. ERISA Litig.*, 231 F.R.D. 416, 423 (N.D. Ok.

2005) (finding the presence of releases not "disqualifying to class certification").  As

such, the mere presence of a possible waiver issue does not preclude class certification.

### 2.    Numerosity

The putative class also satisfies the numerosity requirement because it numbers

5,661 members, which renders joinder impracticable.

Federal Rule 23(a)(1) requires that the proposed class be "so numerous that

joinder of all members is impracticable."  *Mulvania v. Sheriff of Rock Island Cnty.*, 850

F.3d 849, 859 (7th Cir. 2017).  In practical terms, that means that a group of 40 plaintiffs

is sufficient to satisfy the numerosity requirement, even though the number may be less

in certain circumstances.  *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333

n.9 (7th Cir. 1969); *see also Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986)

(collecting cases of class certification with fewer than 29 class members).

By Alcoa's own count, the class numbers 5,661 retirees.  And each of those

retirees shares the common question discussed above.  Were there any doubt that this is

11

sufficiently numerous, the joinder of that many plaintiffs would cause significant

practical problems or would "clog the docket with numerous individual suits." *Eggleston*

*v. Chi. Journeymen Plumbers' Loc. Union No. 130, U.A.*, 657 F.2d 890, 895 (7th Cir.

1981).  As the point of class certification is to avoid those problems where appropriate,

there can be no doubt that numerosity is satisfied.

### 3.     Typicality

The named Plaintiffs' claims also satisfy the Rule 23(a)(3) requirement that they

be "typical of the claims or defenses of the class."  That inquiry "tend[s] to merge" with

the commonality analysis.  *Dukes*, 564 U.S. at 349 n.5.  This case is no exception.

Typicality is the measure of whether the named "plaintiff's interests are aligned

with those of the proposed class in such a way that the representative, in pursuing his

own claims, will also advance the interests of the class."  *Harris v. Cir. City Stores, Inc.*,

2008 WL 400862 (N.D. Ill. 2008).  A named plaintiff's claim is typical when their claim

"arises from the same event or practice or course of conduct that gives rise to the claims

of other class members and his or her claims are based on the same legal theory."  *De La*

*Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (quoting H.

Newberg, *Class Actions* § 1115(b) at 185 (1977)).  The most important component is the

similarity of the named plaintiff's and class's legal theories because identical legal

theories on the same question of law may warrant certification "even in the face of

differences of fact."  *Id.*

To the extent there are minor differences of fact between the named Plaintiffs' and

the putative class members' claims, they do not make the named Plaintiffs' claims

atypical.  The named Plaintiffs advance an identical legal theory to the putative class.
Namely, they postulate that the master agreement gave them a right to company-paid life
insurance.  Further, all the claims, including the putative class representatives' claims,
arise from a singular event: Alcoa's decision to terminate company-paid life insurance for
retirees.  In other words, the advancement of the named Plaintiffs' claims will equally
advance the claims of the class.

Alcoa's only quibble with this analysis is that all of the named Plaintiffs retired
from just two of the 21 different facilities that compose the class.  That fact does nothing
to change the result here.  As discussed in relation to commonality, Plaintiffs allege that
the master agreement provides a right to company-paid life insurance to every facility.
Which facility the class representatives come from is not relevant to commonality, so it is
not relevant to typicality either.  Accordingly, the putative class representatives are
typical of the class.

### 4.    Adequacy

Finally, the named plaintiffs and class counsel[2] are adequate under Rule 23(a)(4).
That Rule requires that "the representative parties will fairly and adequately protect the
interests of the class."  Fed. R. Civ. P. 23(a)(4).  To protect the interests of the class fairly

---

[2] Alcoa does not dispute that the law firms Feinstein Doyle Payne & Kravec, LLC and Macey
Swanson LLP are adequate class counsel.  On the court's independent investigation, the court
finds that counsel has extensive experience in class actions and complex litigation with
concomitant knowledge of the applicable law and has done significant work to develop the
claims here.  (Filing No. 90-7, 90-8).  This satisfies the factors laid out in Rule 23(g)(1) for
adequate class counsel.

and adequately, the representatives must not have antagonistic or conflicting interests with the class.  *See Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999).

Here, the named plaintiffs have the same stake in the case as other class members. Their fortunes in this case rise and fall on the same legal theory as the rest of the class. As a result, they have a strong incentive to vigorously pursue the claim common to each member of the class.

Alcoa once again raises the issue of waiver.  Specifically, it argues that the named plaintiffs do not have adequate incentive to litigate any possible waiver of claims because they did not cash the checks that gave rise to Alcoa's waiver argument.  But one of the named Plaintiffs, Marty Ellison, did cash Alcoa's check.  Surely Mr. Ellison could vigorously litigate the issue and, if necessary, be named as a class representative of a subclass for retirees who cashed checks.  *See e.g.*, *In re Williams Co. ERISA Litig.*, 231 F.R.D. at 424 (finding adequacy deficiency due to presence of waivers "can be remedied by the inclusion of a class representative who did sign a release").  More to the point, any discussion of waiver at this juncture is premature.  It is an affirmative defense that Alcoa has not yet proved.  The hypothetical world where Alcoa might eventually establish waiver against some or all of the retirees who cashed checks is insufficient to preclude class certification.  *Kohen v. Pac. Inv. Mgmt.*, 571 F.3d 672, 680 (7th Cir. 2009) ("To deny class certification now, because of a potential conflict of interest that may not become actual, would be premature.").

5.     **Rule 23(b)**

The main class satisfies the requirements under Rule 23(b)(1).  A (b)(1)(A) class

requires that "prosecuting separate actions by or against individual class members"

creates the risk of either "inconsistent or varying adjudications with respect to individual

class members that would establish incompatible standards of conduct for the party

opposing the class."  Fed. R. Civ. P. 23(b)(1)(A).  This case falls into that category.

Rule 23(b)(1)(A) focuses on cases "where the party is obligated by law to treat the

members of the class alike . . . or where the party must treat all alike as a matter of

practical necessity."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

Plaintiffs have demonstrated that Alcoa must treat all class members the same as a

matter of legal entitlement.  The master agreement suggests that every retiree will have a

continuing right to their life insurance.  (Filing No. 90-1 at 59, 133–41; Filing No. 102-1

at 2).  If that is correct, Alcoa is legally obligated to treat every retiree the same; no

retiree can be singled out to lose life insurance benefits, nor could Alcoa create sub-

classifications to remove benefits.  The master agreement instead requires that Alcoa treat

them as a class with regard to life insurance benefits.  Certification under Rule

23(b)(1)(A) is therefore proper.

This result makes sense.  At issue is the scope of an agreement that Plaintiffs

purport incorporates contractual rights beyond the rights of Alcoa and the USW (i.e. it

provides rights to all retirees previously represented too).  Regardless of whether the

court certifies a class, the court must determine how the contract incorporates the rights

of non-parties to the contract to resolve this dispute.  If this court did not certify a class,

non-parties might be free to have another court examine whether the master agreement vested in all retirees a right to company-paid life insurance despite this court's determination.  *See Spano*, 633 F.3d at 584 (explaining how "the ultimate *res judicata* effect of the final judgment[] depend[s] on the class definition").  Alcoa may then be subjected to an injunction prohibiting it from removing company-paid life insurance even though it may have prevailed over other plaintiffs on the same dispute with the same contractual language.  That risk of subjecting Alcoa to incompatible standards indicates Plaintiffs' common question is particularly suited to class adjudication under Rule 23(b)(1)(A).  *See, e.g.*, *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 598 (W.D.N.C. 2010) (explaining ERISA cases where contractual benefits are challenged "are often certified under Rule 23(b)(1)(A)") (collecting cases).

Alcoa contends that Rule 23(b)(1)(A) certification is not proper because Plaintiffs are seeking individualized money damages for class members.  *See Dukes*, 564 U.S. at 360–62 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3).").  In its view, because the injunction requested by Plaintiffs would require reinstating company-paid life insurance which would pay out benefits based on an individual's plan, their claim is really one for individualized, rather than incidental, damages.  That conclusion is not consistent with Seventh Circuit precedent on the issue. Instead, "[t]he present case is one of incidental damages because if the plaintiffs get the [injunction] they are seeking, the benefits to which the ERISA plan entitles them will simply be read off from the plan."  *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir.

16

2005).  If the class prevails, any monetary recovery will have already been set by their individualized facility-level agreements and can "simply be read off from" that plan.  *Id.*

As Alcoa's other counterarguments simply recast its previously discussed merits contentions and premature waiver issues, the court certifies the main class under Rule 23(b)(1)(A).

### B.     Subclass

Even though the putative subclass relies on multiple different contracts instead of a master agreement, the subclass satisfies the Rule 23(a) requirements and can be certified under Rule 23(b)(1).  Each of the class members claims flows from a singular action taken by Alcoa—the removing of the optional life insurance benefits.  And despite subclass members' legal rights arising from separate agreements, the contractual language in each separate agreement is functionally identical.  That means determining the meaning of that contractual language will "generate common *answers* apt to drive the resolution of the litigation."  *Dukes*, 564 U.S. at 350 (emphasis original).  Class certification in this context is not unusual.  *See Off. and Prof. Emps. Int'l Union v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 311 F.R.D. 447, 449–50 (E.D. Mich. 2015); *see also IUE-CWA v. Gen. Motors Corp.* 238 F.R.D. 583, 591 (E.D. Mich. 2006) (collecting cases where Rule 23(a) satisfied despite different contracts).  Accordingly, the court holds class certification is proper under Rule 23(b)(1).

### 1.     Commonality

Despite the subclass' claims arising out of multiple different contracts, the subclass satisfies the commonality requirement.  The common question here is whether the

17

common language in each of the contractual agreements guarantees an optional life insurance plan for life.  It is not uncommon for this question to receive class treatment even when there are different contracts so long as the contractual language is practically identical.  *See Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *2 (E.D. Mich. Aug. 2, 2010) ("Federal courts considering commonality have held that it does not matter that proposed Class Members retired in different years or under different agreements.").

Here, all 17 relevant agreements contain the same language indicating that the contract incorporates a plan described in a summary plan description.  (*See* Filing Nos. 102-9 to 25, Collective Bargaining Agreements 1–17).  The first descriptions of this plan guaranteed that optional life insurance benefits would continue "for life."  (1993 Life Insurance Plan at 25; *see also* Filing No. 90-6, 1996 Life Insurance Plan Description at 25 (same)).  Plaintiffs contend any newer plan descriptions carry forward the guarantee of those early descriptions.  Put more simply, they submit that there is really only one optional life insurance plan guaranteed by all 17 contracts.  The question is whether the later agreements, negotiated on the skeleton of the 1993/1996 agreements, contain the same guarantee of optional life insurance for life.  If they do, then Alcoa violated its contractual guarantee to all members of the subclass by eliminating benefits; if they do not then none of the members of the subclass have a claim.

One way to look at this question is asking whether the later contracts, as a matter of law, incorporated the 1993 and 1996 agreements because collective bargaining agreements "must be read as a whole," *Mastro Plastics Corp. v. Nat'l Lab. Rel. Bd.*, 350

U.S. 270, 279 (1956), and are "understood only by reference to the background which gave rise" to the agreement, *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 565, 570 (1960) (Brennan, J., concurring).  Another perspective would ask whether the parties, as a matter of fact, actually intended to incorporate and carry this lifelong guarantee into newer agreements.  *See, e.g.*, *Right Field Rooftops, LLC v. Chi. Cubs Baseball Club, LLC*, 870 F.3d 682, 689–90 (7th Cir. 2017) (explaining "the primary objective" of construing a contract "is to give effect to the intention of the parties").  But regardless of whether this is properly a question of law or of fact, it is one common to the subclass; one each member must ask about these contracts to determine, ultimately, whether their guarantee to life insurance has carried forward and prohibits Alcoa's decision to terminate benefits.  Thus, the answer to that question, common to the subclass, "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  Commonality is present.

### 2.    Numerosity

The members of the subclass are sufficiently numerous to make joinder impracticable and satisfy Rule 23(a).  Alcoa identifies the subclass as containing 879 members.  (Ackerman Decl. ¶ 17).  That is well over the benchmark of 40 that typically satisfies the numerosity requirement.  *Swanson*, 415 F.2d at 1333 n.9.  Accordingly, the court has no trouble concluding the putative class is sufficiently numerous.

### 3.    Typicality

Because the named Plaintiff for the subclass, Robert Crow, is in every material way an average member of the subclass and has the same stake in this case's outcome,

typicality is satisfied. Mr. Crow is a retiree who had received optional life insurance benefits after he retired just like the class. (Filing No. 97-10, Crow Dep. 10:1–11). And he advances the same legal argument as the rest of the class based on the language provided in the collective agreements. In other words, Mr. Crow has "the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). The pursuit of his claims then will also necessarily "advance the interests of the class." *Lacy v. Butts*, 1:13-cv-811, 2015 WL 5775497, at *7 (S.D. Ind. Sept. 30, 2015). Typicality is present.

### 4.   Adequacy

Plaintiff Crow will also fairly and adequately protect the interests of the subclass in relation to the common question. There is no indication that Crow has any interest adverse to the subclass. In other words, he is positioned like an average class member and would benefit by advancing the interests of the subclass.

Alcoa again attempts to raise waiver issues to stave off certification. They argue Crow cannot be an adequate class representative because of the conflict of interest created by the possibility of waiver. Again this argument is premature. "To deny class certification now, because of a potential conflict of interest that may not become actual, would be premature." *Kohen*, 571 F.3d at 672. Indeed, it may be, as Plaintiffs contend, that none of the waivers were valid in the first instance. That is a decision for the court to make at a later time after briefing on the issue. And if necessary, a new subclass can be certified to deal with waiver. Crow is an adequate plaintiff to represent the interests of the class as to their common question.

20

## 5.     Rule 23(b)

As with the main class, the subclass is proper under Rule 23(b)(1)(A) because resolution of the common question without class prosecution runs a significant risk of varying adjudications requiring incompatible conduct from Alcoa.

The reasons for this conclusion are duplicative of why Rule 23(b)(1)(A) was appropriate with regard to the main class as the species of claim is identical.  To recount those reasons briefly, the subclass claims that certain contractual language guarantees them a right to optional life insurance for life.  Were this not prosecuted as a class, one court might order Alcoa to reinstate its life insurance plans pursuant to its contractual agreements, while another might find no lifelong right to a life insurance plan at all. Those two judgments could not be reconciled and would "establish incompatible standards of conduct" sufficient to satisfy Rule 23(b)(1)(A).  To the extent Alcoa argues factual differences preclude different judgments from creating incompatible standards, the court already rejected that any minor factual differences prevent class certification here.

## IV.   Conclusion

For the reasons discussed above, the court **GRANTS** Plaintiffs' motion for class certification.  The court, thereby, certifies a class, represented by Plaintiffs Edmond M. Butch, Charles R. Wyatt, Martin L. Ellison, Daniel A. Henry, and Robert H. Crow of:

> All retirees of Alcoa USA Corp., its predecessors, or affiliated companies,
> (1) Who were represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") or its predecessors while they were employees (or in the case of the

21

Wenatchee, Washington facility were represented by the Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC") or its predecessors while they were employees) and who retired from the following facilities on or after June 1, 1993:

- Alcoa, Tennessee (GPP Portion, including Tapoco, North Carolina)[3]
- Badin, North Carolina
- Baton Rogue, Louisiana
- Bauxite, Arkansas
- Frederick, Maryland (retirees on or after October 2, 2001)
- Gum Springs, Arkansas
- Hot Springs, Arkansas
- Lake Charles, Louisiana
- Louisville, Kentucky (Plant 1)
- Massena, New York (East Plant and West Plant, GPP Portion)
- Mobile, Alabama
- Point Comfort, Texas
- Richmond, Virginia
- Rockdale, Texas
- Troutdale, Washington
- Warrick, Indiana
- Wenatchee, Washington
- Corpus Christi, Texas (Sherwin)
- Listerhill, Alabama (Reduction Plant)
- Longview, Washington
- Louisville, Kentucky (Plant 3)
- Torrance, California (Extrusions Plant)
- Fort Meade, Florida (retirees on or after April 20, 1994)
- Bellwood, Virginia (Extrusions Plant) (retirees on or after October 1, 1993)
- Richmond, Indiana (retirees on or after October 1, 1993)

(2) Who were eligible for company-paid life insurance upon their retirement; and,

(3) As to whom Alcoa USA Corp. has terminated company-paid retiree life insurance.

---

[3] There is some dispute over whether Tapoco, North Carolina, is properly included in the class. Given this preliminary stage and the differing evidentiary assertions by the parties, the court tentatively certifies Tapoco as part of the class.  "If the evidence calls into question the propriety" of including Tapoco, the class can be modified.  *Fonder v. Sheriff of Kankakee Cnty.*, 823 F.3d 1144, 1147 (7th Cir. 2016).

The court appoints the law firms Feinstein Doyle Payne & Kravec, LLC and Macy Swanson LLP as class council for the aforementioned class.  The court also certifies a subclass, represented by Plaintiff Robert H. Crow, of:

All retirees of Alcoa USA Corp., its predecessors, or affiliated companies,
  (1)  Who were represented by the USW or its predecessors while they were employees (or in the case of the Wenatchee, Washington facility were represented by the ATC or its predecessors while they were employees);
  (2)  Who upon their retirement were eligible for one or more forms of "Optional" life insurance, including voluntary, additional voluntary, and supplemental life insurance; and,
  (3)  As to whom Alcoa USA Corp. has terminated this retiree life insurance.

The court appoints the law firms of Feinstein Doyle Payne & Kravec, LLC and Macey Swanson LLP as class council for the aforementioned subclass.

The parties are **ORDERED to confer and produce a proposed notice of class certification within 45 days of the date of this Entry**.  If the parties are unable to agree on a proposed notice, **competing proposals are due 60 days from the date of this Entry**.

**IT IS SO ORDERED** this 28th day of September 2022.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronically distributed to counsel of record.