UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| EDMOND M. BUTCH, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:19-cv-00258-RLY-MJD |
| ALCOA USA CORP., et al., | ) ) ) |
| Defendants. | ) ) |

**ORDER ON DEFENDANTS' MOTION FOR LEAVE TO SERVE
INTERROGATORIES ON ABSENT CLASS MEMBERS**

This matter is before the Court on Defendants' Motion for Leave to Serve Interrogatories on Absent Class Members. [Dkt. 128.] In previous orders, Plaintiffs' Motion for Class Certification was granted, [Dkt. 117], and the parties' Joint Proposed Notice was approved, [Dkt. 140] (approving [Dkt. 138-1]). The service of that notice on the class has been stayed pending the resolution of the instant motion, because Defendants propose serving the interrogatories at issue in this motion along with the class notice. Plaintiffs oppose this request. For the reasons stated blow, the Court **DENIES** Defendants' motion, [Dkt. 128]. In addition, Defendants' request for oral argument regarding the motion, [Dkt. 144,] is **DENIED as unnecessary**.

## I.  BACKGROUND

This case arises out of Defendant Alcoa USA Corp.'s elimination of life insurance benefits for many of its retired employees in December 2019. The Plaintiff-retirees worked at a variety of Alcoa facilities throughout the United States (totaling twenty-one facilities) and were represented by either the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC ("USW") and its

predecessors or the Aluminum Trades Council of Wenatchee, Washington AFL-CIO ("ATC") and its predecessors. [Dkt. 44 at ¶¶ 13-18.] The retirees' life insurance benefits consisted of either "company-paid life insurance" or "optional life insurance," for which the retiree would pay a contractual premium to receive additional, voluntary coverage. [Dkt. 97-2 at ¶¶ 11, 13-15, 17-18, 74-75).] In this case, the retirees challenge the elimination of the company-paid life insurance benefits, arguing that the termination of benefits violated a master collective bargaining agreement between the employees and Alcoa. *See* [Dkt. 44 at ¶ 74] (defining the "Class"). A subset of the retirees also seek reinstatement of the optional life insurance benefits pursuant to a different set of collective bargaining agreements between the retirees and Alcoa. *See id.* at ¶ 75 (defining the "Subclass"). The Class consists of approximately 5,661 retirees; the Subclass consists of a subset of approximately 879 of the same retirees.

After announcing that it intended to eliminate the life insurance benefits, Alcoa sent three letters to the affected retirees between December 5, 2019, and January 10, 2020. [Dkt. 129.] The first letter, sent December 5, 2019, provided notice of the elimination of life insurance benefits and included a "discretionary payment" that represented twenty percent of the value of death benefits under the canceled insurance. [Dkt. 134.] The letter also contained a disclaimer that the check had to be cashed by February 29, 2020, and that "[b]y endorsing and presenting this check for payment, you are agreeing to waive any claims for life insurance coverage from the Company after December 31, 2019." [Dkt. 129, 134.] Following the filing of this lawsuit on December 19, 2019, Alcoa sent a second letter on December 26, 2019, to the retirees who had not yet cashed their checks. *Id.* A third letter was sent on January 10, 2020, announcing the commencement of this lawsuit and informing the retirees of their right to participate in and prosecute their claims. *Id.* Both the second and third letters contained the same waiver language

present in the initial letter from December 5, 2019.  *Id.*  Approximately 88% of the retirees cashed the check and signed the waiver.  [Dkt. 117.]

## II.  LEGAL STANDARD

Absent class members are "parties" that, under certain circumstances, may be subject to discovery procedures under Rules 33 and 34 of the Federal Rules of Civil Procedure.  *Brennan v. Midwestern United Life. Ins. Co.*, 450 F.2d 999, 1004 (7th Cir. 1971).  Absent class members, however, are given a "free ride" under Rule 23 to not be engaged in the prosecution of the action, and thus are not required to submit to discovery "as a matter of course." *Id.* at 1005; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810 & n.2 (1985) ("Unlike a [party] in a normal civil suit, an absent class-action plaintiff is not required to do anything.").  However, the district court has discretion to determine when compelling absent class members to undergo Rules 33 and 34 discovery procedures is proper.  *Id.*  Discovery from absent class members may be proper when it "is necessary or helpful to the proper presentation and correct adjudication of the principal suit."  *Id.*  However, the trial court "must be assured that the requested information is actually needed in preparation for trial."  *Id.* at 1006 (internal quotations omitted and cleaned up).  And "adequate precautionary measures [must be] taken to insure that the absent member is not misled or confused."  *Id.*

The party seeking to compel discovery from absent class members has the burden of demonstrating its merits.  *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974).  With respect to written interrogatories, it must be shown the interrogatory "is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants.'"[1]  *Id.* (quoting *Brennan*, 450 F.2d at 1005); *see Rogers v. Baxter Intern, Inc.*, 2007

---

[1] Defendants' motion specifically addresses interrogatories; however, Defendants state that they

WL 2908829, at *1 (N.D. Ill. Oct. 4, 2007) ("Post-certification discovery directed at individual class members (other than named plaintiffs) should be conditioned on a showing that it serves a legitimate purpose . . . One of the principal advantages of class actions . . . would be lost if all class members were routinely subject to discovery." (quoting Manual for Complex Litigation, Fourth § 21.41 (2004))). In addition, even where the moving party's burden is met, the proposed discovery "must be carefully limited to protect absent class members from harassment, and to ensure that the advantage of streamlined discovery in a class action lawsuit is not lost." Clark, 501 F.2d at 340 (internal citations omitted).

### III. DISCUSSION

Defendants seek leave to serve interrogatories on the absent class members who signed the waivers and cashed their checks, which includes more than 4,970 of the retirees. [Dkt. 128; Dkt. 134 at 5 n.1.] The interrogatories consist of seventeen questions spanning multiple pages. [Dkt. 128-1.] Defendants suggest that the interrogatories be included with the class certification notice sent to the class members who signed the waiver. For the following reasons, the Court denies Defendants' motion.

In the order granting class certification, Judge Young stated that any discussion of waiver was premature, and that "[i]t is an affirmative defense that Alcoa has not yet proved." [Dkt. 117 at 14.] Judge Young further noted that "it may be, as Plaintiffs contend, that none of the waivers

---

wish to reserve the right to move for leave to take depositions if necessary in their opening brief. [Dkt. 129.] The standard discussed herein is also applicable to discovery by deposition. *See Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir. 1974) ("The taking of depositions of absent class members is—as is true of written interrogatories—appropriate in special circumstances."). Despite this, the moving party's burden is much stronger for deposition discovery due to the nature of the deposition process. *See id.* ("[W]e are of the view that the burden confronting the party seeking deposition testimony should be more severe than that imposed on the party requesting permission to use interrogatories."). In any event, Defendants do not actually seek to take depositions at this juncture.

were valid in the first instance.  That is a decision for the court to make at a later time after briefing on the issue." *Id.* at 20.  Conversely, as Plaintiffs note, if Defendants are granted summary judgment as to the common question of contractual liability, the validity of the affirmative waiver defense would inherently become moot.  *See* [Dkt. 134 at 6].  The Court agrees that it would be inefficient to require discovery from approximately 5,000 class members at this stage of the litigation when dispositive motions might well eliminate or narrow the issues to which any such discovery might be relevant.  *See On the House Syndication, Inc. v. Federal Exp. Corp.*, 203 F.R.D. 452, 458 (S.D. Cal. 2001) ("[T]he most appropriate time to gather any necessary information from individual class members is generally after a determination of liability and before payment of individual claims."); *McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514 (S.D. Cal. 2008) (denying defendants request to serve four interrogatories on 178,257 absent class members prior to class-wide issues being determined).

      In addition to the inefficiency of permitting the discovery at issue at this stage of the litigation, there would also be substantial potential for confusion if the interrogatories were to be sent with the class notice as requested by Defendants.  Under Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure, a court is given discretion to require certification notice in Rule 23(b)(1) classes such as this one, and Judge Young has ordered notice in this case.  [Dkt. 117 at 23.]  The notice process is designed to be simple for class members to follow so that they understand the class action process and how it may affect them.  Including several pages of interrogatories would only serve to eliminate that simplicity.  Take, for instance, the competing instructions of the proposed notice, "You do not need to do anything to participate [in this lawsuit]," with the proposed written interrogatories "You must respond to this request to answer the following interrogatories within 30 days."  [Dkt. 138-1 at 1; Dkt. 128-1 at 3.]  These

conflicting instructions—which Defendants seek to send simultaneously and as the first communication with the class—would, by no means, be easily followed and understood.

In addition, the Court has reviewed the proposed interrogatories and finds that the discovery sought by Defendants is simply not proportional to the needs of the case at this time. *See* Fed. R. Civ. P. 26(b)(1).  Accordingly, the Court **denies** Defendants' Motion for Leave to Serve Interrogatories on Absent Class Members.[2]  [Dkt. 128.]

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Leave to Serve Interrogatories on Absent Class Members, [Dk. 128], is **DENIED**.  Furthermore, Defendants' request for oral argument regarding the motion, [Dkt. 144], is **DENIED as unnecessary**.  By **April 25, 2023**, the parties shall file a proposed joint scheduling order for the remaining deadlines in this case, *see* [Dkt. 121, 136, 139], and a plan for service of class notice, *see* [Dkt. 140].

SO ORDERED.

Dated:  11 APR 2023

                                   _____
                                   Mark J. Dinsmore
                                   United States Magistrate Judge
                                   Southern District of Indiana

---

[2] This denial is without prejudice, in that Defendants may seek leave to serve appropriately narrow discovery on absent class members following rulings on dispositive motions if such discovery is relevant to the claims or defenses remaining in this case at that time.  That said, the Court notes that the possible relevance of a number of the proposed interrogatories appears tenuous, at best, and therefore any future motion for leave to serve discovery on absent class members should include an explanation of the relevance of, and need for, each interrogatory or other discovery that is proposed at that time.

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.