IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

EDMOND M. BUTCH, et al.,

        Plaintiffs,

v.

ALCOA USA CORP., et al.,

        Defendants.

No. 3:19-cv-258-RLY-CSW

**REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO AMEND SUMMARY JUDGMENT ORDER**

**I.    INTRODUCTION**

Plaintiffs have asked this Court to amend its Entry on Parties' Motions for Summary Judgment and Decertifying Class, ECF No. 192 ("the Summary Judgment Order"), to state that the Subclass entitled to summary judgment as to Counts III and IV includes not only retirees from the six locations listed in the 1993 USW life insurance SPD at ECF No. 90-5 (*i.e.*, Alcoa, Tennessee; Badin, North Carolina; Bauxite, Arkansas; Mobile, Alabama; Point Comfort, Texas; and Rockdale, Texas), but also retirees from Tapoco, North Carolina; Massena, New York; Warrick, Indiana; Wenatchee, Washington; and Richmond, Indiana. *See* ECF No. 194.

Alcoa asks the Court to deny the request, claiming that Plaintiffs did not raise arguments as to these locations in their summary judgment motion. *See* ECF No. 201 at 1. This statement is false. Pursuant to the Court's September 28, 2022 class certification order, Tapoco was part of Alcoa, Tennessee at the time the parties filed their summary judgment briefs and Alcoa never objected to that finding. Therefore, Tapoco retirees should be considered part of the certified Subclass entitled to judgment under the Summary Judgment Order, just like the Alcoa, Tennessee

1

retirees are. Furthermore, Plaintiffs advanced the same argument on summary judgment about the rights of the Warrick, Massena, and Wenatchee retirees to lifetime voluntary life insurance under the 1993 *ABG* life insurance SPD as they did with respect to the retirees from the locations listed in the 1993 *USW* life insurance SPD. In other words, Plaintiffs' arguments about the Tapoco, Massena, Warrick, and Wenatchee retirees' right to voluntary life insurance for life are nothing new.

Moreover, while Plaintiffs did not previously brief the Richmond retiree's entitlement to voluntary life insurance on summary judgment, **neither did Alcoa**, so common-sense dictates that the Court consider the matter now. The certified Subclass as currently defined includes a single retiree from Richmond,[1] and the Court's Summary Judgment Order does not address the entitlement to voluntary life insurance for retirees from locations other than the six identified in the order one way or the other. *See* ECF No. 192 at 28. Accordingly, the issue must be decided. Since the Richmond retiree's entitlement is readily amenable to summary resolution, the sensible course is for the Court to consider whether the Summary Judgment Order should be amended to include the Richmond retiree too. As addressed below, it should be.

As further explained below, the Court should reject Alcoa's opposition to the proposed amendment and grant Plaintiffs' motion.

---

[1] As discussed in Plaintiffs' opening brief, the class data produced by Alcoa shows that retirees from Tapoco, Massena, Warrick, Wenatchee, and Richmond had voluntary life insurance before it was terminated by Alcoa in 2020 and did not cash checks from Alcoa purporting to waive their claim to life insurance benefits, including one retiree from Richmond who is now deceased. These retirees are part of the certified Subclass by definition and therefore remain part of this case, *see* ECF No. 117 at 23 (defining the Subclass): ECF No. 192 at 3 (same), even though the Court's Summary Judgment Order as to the Subclass entitled to judgment with respect to Counts III and IV currently does not apply to them. *See* ECF No. 192 at 28.

**II.     ARGUMENT**

        **A.     The Tapoco Facility**

As Plaintiffs pointed out in their opening brief, in the certified Main Class definition, the retirees from the Alcoa, Tennessee facility include retirees from the Tapoco, North Carolina facility, *see* ECF No. 117 at 22, n. 3; *see also* ECF No. 192 at 2; therefore, Tapoco retirees are entitled to company-paid life insurance under the Summary Judgment Order. *See* ECF No. 192 at 19 (granting summary judgment as to Count I and II). Since the certified Subclass is a "subset" of the Main Class, *see* ECF No. 117 at 1, logic dictates that Alcoa, Tennessee includes Tapoco for the purposes of the entitlement to voluntary life insurance too. Indeed, the Court understood that Plaintiffs' proposed Subclass included "retirees from 10 different facilities[,]" one of which was Tapoco, *see* ECF No. 117 at 5 (citing ECF No. 97-2 at 5, ¶ 17), and it certified the Subclass after Plaintiffs explicitly argued that the 1993 USW life insurance SPD's reference to Alcoa, Tennessee included Tapoco. *See* ECF No. 117 at 23; ECF No. 101 at 18.[2] Accordingly, Plaintiffs now simply ask the Court to clarify its current, undisturbed holding that for purposes of this case, Alcoa, Tennessee includes Tapoco, and to make clear that Tapoco retirees, like Alcoa, Tennessee retirees, are part of the Subclass entitled to judgment as to Counts III and IV. *See* ECF No. 194 at 3.

Even though Alcoa has never raised any evidence challenging the Court's class certification ruling on this point, it now opposes Plaintiffs' proposed clarification as to Tapoco. *See* ECF No. 201 at 5. But Alcoa offers no legitimate reason to deny the clarification.

---

[2] When discussing the Subclass's entitlement to lifetime voluntary life insurance in their class certification reply, Plaintiffs pointed out that the 1993 USW life insurance SPD covered "the plants at Alcoa[, Tennessee] (including, as discussed above, Tapoco), Badin Bauxite, Mobile, Point Comfort, and Rockdale[.]" *See* ECF No. 101 at 18 (citing the 1993 USW life insurance SPD at ECF No. 90-5).

As an initial matter, Alcoa objects that Plaintiffs "could have presented their arguments and evidence with regard to the Tapaco [sic] facility in their original summary judgment motion or reply brief, but they did not." *See* ECF No. 210 at 6. But this argument fails because the Court had already held in its class certification ruling that Tapoco was part of Alcoa, Tennessee when the parties presented their summary judgment motions in the summer of 2023. *See* ECF Nos. 168 and 171. Because the Court's class certification order provided that Tapoco was part of Alcoa, Tennessee subject to modification, "[i]f the evidence calls into question the propriety of including Tapoco," *see* ECF No. 117 at 22, n.3, it was incumbent upon Alcoa to show that Tapoco was **not** part of Alcoa, Tennessee if it wanted to change the status quo. Since Alcoa never did, Plaintiffs were not required to prove a point they established on class certification for a second time on summary judgment.

Alcoa also claims that the fact that Tapoco is part of Alcoa, Tennessee in the Main Class definition is irrelevant because "[t]he question is not whether the Tapoco retirees are included in the Subclass (which is not limited to specific facilities only, like the Main Class). The question is whether the 1993 USW SPD, which the Court held expressly applies to six facilities only, also applies to Tapoco." *See* ECF No. 201 at 7 (citations omitted). Alcoa is wrong again. For one thing, the Subclass **is** limited to specific facilities, *i.e.*, those facilities listed in the Main Class definition. If it were not so limited, it would be a separate class, not a subclass. In fact, Alcoa **knows** that all Subclass members are in the Main Class because it produced a class list which shows that to be the case.

Moreover, contrary to Alcoa's assertion, Plaintiffs were not required to "clearly and expressly" prove on summary judgment that the reference to "Alcoa, Tennessee" in the 1993 USW life insurance SPD meant Tapoco because, again, the Court's class certification ruling already

4

made clear that retirees from Alcoa, Tennessee, as a group, include retirees from Tapoco. *See* ECF No. 117 at 22. By way of illustration, the Retiree Life Insurance SPD which grants company-paid life insurance to the Main Class explicitly identifies Alcoa, Tennessee but not Tapoco, *see* ECF No. 169-20 at 12, and when the Court ruled in favor of the Main Class based on the language of that SPD as to Counts I and II, that ruling, *which Alcoa has not challenged*, applied to Tapoco. *See* ECF No. 192 at 19. Therefore, when the Court ruled that the 1993 USW life insurance SPD granted lifetime voluntary life insurance benefits to Alcoa, Tennessee retirees, that ruling should also apply to the Tapoco retirees too.

Alcoa also tries to attack the original evidence Plaintiffs submitted with their April 22, 2022 class certification reply showing that Tapoco is part of Alcoa, Tennessee (which the company misleading refers to as "several new documents"), claiming it does not show that the 1993 USW life insurance SPD applied to Tapoco. *See* ECF No. 201 at 7. This effort fails too, because Alcoa does not dispute that this evidence shows exactly what Plaintiffs originally argued that it shows, which is that the USW Local 309 represented employees from both locations.[3] The fact that the Tapoco employees and the Alcoa, Tennessee employees were represented by the same local bargaining unit means they shared a "community of interest," which in turn means that they shared the same "working conditions, wages, and *fringe benefits*[.]" *See NLRB v. Speedway Petroleum,*

---

[3] By way of background, the link between the facilities can be explained by the fact that despite being physically separated, Tapoco and Alcoa, Tennessee were operationally interdependent. Alcoa developed the Tapoco powerplant, which it operated as a subsidiary, to provide power to the Alcoa, Tennessee location, which in turn was Tapoco's only customer. *See Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 954-956 (1986); https://www.businesswire.com/news/home/20121115006710/en/Alcoa-Finalizes-Sale-of-Tapoco-Hydroelectric-Project-to-Brookfield-Renewable-Energy-Partners (last accessed May 13, 2024)). That is why both locations were considered part of one consolidated "Alcoa Works." *See* ECF No. 102-8 at 2.

*Div. of Emro Mktg. Co.*, 768 F.2d 151, 155 n.4 (7th Cir. 1985) (emphasis added). Naturally, this shared interest would (and in fact, did) include the same voluntary life insurance benefits for the same duration.

Alcoa's position underscores this point. By opposing Plaintiffs' proposed clarification, Alcoa asks the Court to find that Alcoa and the USW Local 309 agreed that upon retirement, employees at Alcoa, Tennessee would receive voluntary life insurance benefits for the rest of their lives but employees at Tapoco would only receive those same benefits for the duration of the CBA in effect when they retired. Further, Alcoa asks the Court to find that notwithstanding those two different agreements, in practice, for years Alcoa nevertheless provided the Tapoco retirees with voluntary life insurance for the exact same lifetime duration as the Alcoa, Tennessee retirees without any contractual obligation to do so. This proposition is facially implausible.

Moreover, Alcoa has produced no affirmative evidence that the Tapoco retirees were intended to be treated differently from the Alcoa Tennessee retirees. This is so even though as the once owner of both locations, the party to the agreements with the USW Local 309, and the sponsor of the life insurance benefits at issue, Alcoa is the party in the best position to explain the disparity it asks the Court to now adopt. This shows that Alcoa's current objection is purely motivated by a pecuniary desire to avoid paying benefits rather than a good faith belief about the underlying facts.

### B. The Massena, Warrick, and Wenatchee Facilities

In their opening brief, Plaintiffs showed that the retirees from Massena, New York; Warrick, Indiana; and Wenatchee, Washington should be included in the Subclass entitled to summary judgment as to Counts III and IV because the 1993 ABG life insurance SPD applicable to those locations at ECF No. 102-26 contains the same relevant language (*e.g.*, "continued for

6

life") as the 1993 USW life insurance SPD at ECF No. 90-5 applicable to the six facilities identified the Summary Judgment Order. *See* ECF No. 194 at 3-5. Since the Court held that the 1993 USW life insurance SPD granted lifetime voluntary life insurance, the 1993 ABG life insurance SPD must grant lifetime voluntary life insurance to the Massena, Warrick, and Wenatchee retirees. *See id.*

Alcoa concedes that the language in the two SPDs is "substantially similar." *See* ECF No. 201 at 15, n.2. However, it opposes Plaintiffs' requested amendment as to Massena, Warrick, and Wenatchee. Notably, the *only* reason Alcoa submits that the proposed amendment should be denied is that Plaintiffs presented no (later softened to "hardly any") argument with respect to these three facilities in connection with their summary judgment brief. *See* ECF No. 201 at 14.

This assertion is plainly false. Plaintiffs' opening summary judgment brief included the same arguments as to meaning of the 1993 USW life insurance SPD and the 1993 ABG life insurance SPD for Warrick, Massena, and Wenatchee. *See* ECF No. 169 at 12-13, ¶¶ 8-10 (citing and quoting language from both SPDs, including the language stating that after age 65 voluntary life insurance is "continued for life"); 34-35 (same). Since the argument was sufficient for the Court to grant summary judgment for the USW locations, it should be sufficient to grant summary judgment for Warrick, Massena, and Wenatchee.

Alcoa's claim that Plaintiffs did not advance a substantive argument about the 1993 ABG life insurance SPD in their summary judgment brief is also belied by its own response to that brief, where it cited and made counterarguments about both the 1993 USW life insurance SPD and the 1993 ABG life insurance SPD. *See* ECF No. 172 at 47-50 (repeatedly citing the "1993 USW Employee SPD" it filed at ECF No. 173-1 and the "1993 ABG Employee SPD" it filed at ECF No. 173-47). In fact, in arguing that the Court should limit the scope of the "continued for life"

7

language in those SPDs, Alcoa stated that the 1993 USW life insurance SPD applied to "six specific facilities only," *i.e.*, those currently covered by the Summary Judgment Order, while the 1993 ABG life insurance SPD applied to "***different facilities***"—*i.e.*, Massena, Warrick, and Wenatchee. *See id.* at 50 (citing the 1993 ABG life insurance SPD it filed at ECF No. 173-47 at 4, where the three facilities are listed) (emphasis added). In other words, Alcoa clearly had no difficulty discerning Plaintiffs' so-called "vague and perfunctory" arguments.

All of this makes clear that Alcoa's current assertion that the entitlement of the Massena, Warrick, and Wenatchee retirees was not at issue during summary judgment is not made in good faith based on the facts. Instead, like its opposition to the inclusion of Tapoco, it is motivated by pure opportunism and the hope that it will be able to use procedural niceties to avoid paying the life insurance benefits it owes to retirees.

Notwithstanding Alcoa's efforts to deny reality, it is clear that the Court simply conflated the 1993 ABG life insurance SPD with the 1993 USW life insurance SPD. That simple oversight is easily corrected by Plaintiffs' proposed clarification to the Summary Judgment Order.

C.  **The Richmond Facility**

Unlike Tapoco, Massena, Warrick, and Wenatchee, Plaintiffs had not previously specifically addressed the entitlement of the retirees from Richmond, Indiana to voluntary life insurance. *See* ECF No. 194 at 5-6. At the outset, Alcoa argues that because Plaintiffs did not make an argument about Richmond with their summary judgment motion, the Court should not consider amendment. *See* ECF No. 201 at 8-9. But as discussed above, this objection ignores the practical reality. The certified Subclass, as defined, includes the single Richmond retiree who did not cash a check from Alcoa because she was represented by a union when she retired, was eligible for voluntary life insurance upon retirement, and her insurance terminated by Alcoa. *See* ECF No.

8

117 at 23 (defining the Subclass); ECF No. 192 at 3 (same).  And while Alcoa criticizes Plaintiffs for failing to advance an argument on summary judgment about Richmond after having "ample time" to learn that the Subclass included Richmond retirees, *see* ECF No. 201 at 9, **neither did Alcoa**.  *See* ECF No. 172 at 47-52; ECF No. 178 at 22-25.[4]  Accordingly, since the Summary Judgment Order made clear that the Court was taking "no position" on the entitlement to voluntary life insurance for retirees from any location other than the six identified in the order, *see* ECF No. 192 at 28, the single Richmond retiree's claim for voluntary life insurance remains pending in this case.  It makes no sense for the Court to abstain from considering her entitlement now because the alternative, in the current posture, is that the parties would instead have to proceed to another round of summary judgment motions or a trial on her claim.  Further, Alcoa has had ample opportunity to rebut Plaintiffs' argument as to Richmond in its response brief (in fact, far more of an opportunity than it would have had within the context of the original summary judgment briefing) and thus cannot be said to have suffered any prejudice in responding to it now.

Setting that point aside, Alcoa's arguments against the merits of the Richmond retiree's claim fail.  The company contends that Plaintiffs have admitted that they do not have affirmative evidence of a contract that grants Richmond retirees lifetime voluntary life insurance benefits.  *See* ECF No. 201 at 9-10.  But Plaintiffs have admitted nothing of the sort.  It is true that Richmond

---

[4] For example, Alcoa could have argued that because Plaintiffs produced no evidence as to Richmond, it was entitled to summary judgment as to the voluntary life insurance claims for retirees from that location.  But it did not.  In fact, its summary judgment brief makes clear that, like Plaintiffs, Alcoa was operating under the mistaken assumption that the Subclass did not include Richmond retirees.  In its opening brief, Alcoa argued that even if the 1993 and 1996 SPDs Plaintiffs relied upon provided lifetime benefits, those SPDS "apply to only a fraction of the Subclass members—specifically, those who retired between 1993 and 2001 when the 1993 and 1996 CBAs were in effect."  *See* ECF No. 172 at 49-50.  If Alcoa had known that it could have made the argument that those SPDs did not apply to any of the retirees from Richmond with voluntary life insurance either, regardless of when they retired, it surely would have done so.

9

was not covered by the 1993 Alcoa/USW Master Agreement, that Richmond is not listed on the 1993 USW life insurance SPD, and that Plaintiffs have not located a 1993 Richmond life insurance SPD akin to the 1993 SPDs that apply to the other ten Subclass locations. However, Plaintiffs have submitted a 1993 Memorandum of Settlement for Richmond, which applied to the Richmond retiree (who retired on August 1, 1994, according to Alcoa's records). *See* ECF No. 194-2. To be clear, it is Plaintiffs' position that ***this*** 1993 agreement grants the Richmond retiree voluntary life insurance benefits for her lifetime. Indeed, there is no dispute that the Richmond retiree was entitled to voluntary life insurance pursuant to the labor agreement in effect when she retired. The only question is whether her entitlement was lifetime or limited to the duration of the CBA in effect when she retired.

The 1993 Richmond agreement in the record does not contain language unambiguously stating that voluntary life insurance benefits are "continued for life" like the 1993 SPDs do. But that is not the end of the inquiry, because CBAs can provide lifetime benefits through implied terms too. *See Stone v. Signode Indus. Grp. LLC*, 943 F.3d 381, 385 (7th Cir. 2020) (a CBA may provide benefits that survive its duration "through implied terms"). *See also Conrail v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 311 (1989) (CBAs "may include implied, as well as express, terms"). Here, there is ample evidence that the same "continued for life" provision that was an explicit term of the 1993 USW life insurance SPD for the other Master Agreement facilities was an implied term of the 1993 Richmond agreement: the voluntary life insurance plan had been frozen to new enrollment since 1978, *see* ECF No. 192 at 20-21, when Richmond ***was*** a USW Master Agreement facility; the retirees from the other USW Master Agreement facilities had lifetime voluntary life insurance (as the Court held in the Summary Judgment Order); and there is no documentary contractual evidence that Richmond was ever to be treated differently. This is

10

strong evidence that the retirees all had the same contractual entitlement. *See Transportation Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 161 (1966) ("In order to interpret [a CBA] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements."); *Conrail*, 491 U.S. at 311 (same); *Stone*, 943 F.3d at 389 (same).

Further, it is undisputed that Richmond retirees maintained their voluntary life insurance for over two decades (and well after the plant itself had closed) until Alcoa terminated that insurance in 2020, just like the retirees from the other USW Master Agreement facilities the Court found to be entitled to lifetime benefits. This "course of performance" evidence demonstrates that the Richmond retirees shared the same contractual rights as the others. *See Old Colony Tr. Co. v. Omaha*, 230 U.S. 100, 118 (1913) ("the practical interpretation of a contract . . . for any considerable period of time . . . is deemed of great, if not controlling, influence"); *Ins. Co. v. Dutcher*, 95 U.S. 269, 273 (1877) ("There is no surer way to find out what parties meant, than to see what they have done").

Alcoa's arguments to the contrary fall flat. The company claims that Plaintiffs are trying to "flip their burden" and that by pointing to the lack of evidence that the parties intended to treat Richmond differently from the other USW Master Agreement facilities, Plaintiffs are "putting the cart before the horse, because there is no evidence of an agreement to provide lifetime [voluntary] life insurance benefits in the first place." *See* ECF No. 201 at 11-12. This argument ignores that there *is* a 1993 agreement applicable to Richmond which was in effect when the Richmond retiree retired. Plaintiffs are simply asking the Court to interpret that agreement, consistent with traditional Supreme Court and Seventh Circuit rules of CBA interpretation. Alcoa is the party that is asking the Court to flip the applicable burden by finding that without evidence of unambiguous

11

lifetime language, the Richmond retiree must lose. *See, e.g., Stone*, 943 F.3d at 385 (a CBA may vest benefits through "explicit terms" or "implied terms" and may be "ambiguous—due to either a patent or latent ambiguity").

Alcoa also says that the fact that the voluntary life insurance program was frozen to new employee enrollment since 1978 "says nothing" about whether a Richmond retiree had the same entitlement to life voluntary insurance upon retirement as other USW Master Agreement retirees. *See* ECF No. 201 at 11. To the contrary however, it would not make sense that the union and Alcoa would agree that Richmond employees—who like the other USW Master Agreement retirees had been paying premiums for voluntary life insurance since 1978—would be singled out and not able to keep that insurance for life. *See Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir. 2002) ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons."). And it certainly would not have made sense for Alcoa, despite that different agreement, to have nevertheless provided Richmond retirees with lifetime voluntary life insurance for decades, just like the other USW Master Agreement retirees, without having a contractual obligation to do so.

On this point, Alcoa does not dispute its course of performance, but instead objects that it "is not a substitute for evidence of an agreement to provide retirees from Richmond with lifetime [voluntary] life insurance benefits." *See* ECF No. 201 at 12. But in this respect, the company is misstating the law. Plaintiffs have no need for "substitutes" because under ordinary principles of contract law, Alcoa's course of performance *is* evidence of an agreement to provide lifetime benefits. *See, e.g., Stone*, 943 F.3d at 389-90 ("How the parties to a contract actually perform their contractual undertakings is often persuasive evidence of what the parties understood the contract to require.") (citations omitted and cleaned up).

12

### III. CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to reject Alcoa's opposition and amend its Summary Judgment Order by entering the proposed order filed with their motion.

Dated:  May 13, 2024                                   Respectfully submitted,

                                                s/Joel R. Hurt
                                                 Joel R. Hurt

**FEINSTEIN DOYLE PAYNE**
   **& KRAVEC, LLC**

Pamina Ewing
Joel R. Hurt
Ruairi McDonnell
429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, Pennsylvania 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007
pewing@fdpklaw.com
wpayne@fdpklaw.com
jhurt@fdpklaw.com
rmcdonnell@fdpklaw.com

**MACEY SWANSON LLP**
Barry A. Macey
Jeffrey A. Macey
429 N. Pennsylvania Street, Suite 204
Indianapolis, Indiana 46204
Telephone: (317) 637-2345
Facsimile: (317) 637-2369
bmacey@maceylaw.com
jmacey@maceylaw.com

***Attorneys for Plaintiffs***

13

## CERTIFICATE OF SERVICE

      I hereby certify that, on May 13, 2024, a copy of the foregoing document was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

                                                s/Joel R. Hurt
                                                Joel R. Hurt